**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━

**JOHNNY P.,**

                            **Plaintiff,**                          **6:20-CV-7082Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━━

<u>**DECISION AND ORDER**</u>

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #12.

**BACKGROUND**

Plaintiff applied for disability insurance benefits with the Social Security Administration ("SSA"), on January 25, 2018, alleging disability beginning January 1, 2017, at the age of 46, due to asthma, obesity, learning disorder, cannabis use disorder, and mild anxiety disorder. Dkt. #7, pp.66-67.

On December 6, 2019, plaintiff appeared with counsel by video conference and testified, along with an impartial vocational expert ("VE"), Dale Pasculli,

at an administrative hearing before Administrative Law Judge ("ALJ"), David Neumann. Dkt. #7, pp.35-65. Plaintiff's attorney advised the ALJ that plaintiff had received SSI as a child, presumably due to a learning disability, and again as an adult,[1] and requested an intelligence assessment. Dkt. #7, p.38.

Plaintiff testified that he was in special education classes from elementary school until he dropped out of school in the tenth grade. Dkt. #7, p.39. Plaintiff had been homeless but currently lived alone in an apartment[2] with a care manager[3] assisting him with food, bills, clothing and health care. Dkt. #7, p.46. He can barely read a children's book and can't really subtract. Dkt. #7, p.46. He takes a friend or his sister to the store with him so he doesn't get taken advantage of because of his inability to count money. Dkt. #7, pp.54-55. To obtain his driver's license, someone read the questions to him. Dkt. #7, p.47. He misses a lot of appointments because he forgets to put them in the calendar on his phone. Dkt. #7, p.47.

Plaintiff testified that he was assaulted in 2010 and spent seven days in a coma with a concussion, fractured eye socket, jaw fracture and fractured ribs. Dkt. #7, pp.47-48. He also suffered a loss of hearing in his right ear. Dkt. #7, pp.50-51. He still

---

[1] The record indicates that plaintiff received benefits from 2001 through July, 2017. Dkt. #7, p.192. Plaintiff could not remember why his benefits terminated. Dkt. #7, p.38.

[2] Intake notes from Villa of Hope indicate that plaintiff had been homeless for a year and half before moving into an apartment in February of 2019. Dkt. #7, p.413.

[3] Plaintiff's counsel advised that he had requested a narrative from his care manager but "it didn't come in." Dkt. #7, p.37.

experiences a lot of pain from that injury, including daily headaches. Dkt. #7, pp.50-52.

He experiences flashbacks from the assault, is afraid to sleep at night, and is afraid to

be around certain people. Dkt. #7, p.51. He experiences back pain and can barely get

on and off the toilet. Dkt. #7, pp.53-54. He can barely lift twenty pounds, can sit

comfortably for no more than an hour and can stand for about an hour. Dkt. #7, pp.54 &

55. He can walk about ten minutes at a time. Dkt. #7, p.56. Plaintiff prefers to be alone

and spends his time watching movies or playing video games. Dkt. #7, pp.54-55. He

goes to the store two-three times a week. Dkt. #7, p.57. His sister does his laundry. Dkt.

#7, p.58. He goes to a community ministry for lunch sometimes and sometimes helps

serve food or sweep. Dkt. #7, p.60.


The VE testified that plaintiff had no prior work history. Dkt. #7, p.61.

When asked to assume a hypothetical person of plaintiff's age, education and past

work experience who would require simple, routine, repetitive work at an SVP of 1 or 2,

with no more than occasional changes in the work setting, who could lift and carry ten

pounds frequently and twenty pounds occasionally; stand and walk with normal breaks

for a total of six hours in an eight hour workday; sit with normal breaks for a total of six

hours in an eight hour workday; push and pull; climb ropes, ladders and scaffolds

occasionally; and must avoid concentrated pollutants and temperature extremes, the

VE testified that such an individual could work as a routing clerk, cafeteria attendant or

photocopying machine operator, each of which were light exertion jobs with an SVP of

2. Dkt. #7, pp.62-63. If the individual was limited to only occasional interaction with the

public, the VE testified that the cafeteria attendant position would be eliminated, but the

position of packing line worker, a light exertion position with an SVP of 2, would also be available. Dkt. #7, p.63.

The ALJ rendered a decision that plaintiff was not disabled on March 19, 2020. Dkt. #7, pp.19-29. The Appeals Council denied review on November 19, 2020. Dkt. #7, p.5. Plaintiff commenced this action seeking review of the Commissioner's final decision on December 16, 2020. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a). At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 404.1520(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 404.1520(g).

    In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2017; (2) plaintiff's asthma, obesity, learning disorder, cannabis use disorder and mild anxiety disorder constitute severe

impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4)

plaintiff retained the RFC to perform light work with the following limitations: lift, carry,

push and pull ten pounds frequently and twenty pounds occasionally, stand and walk

for a total of six hours in an eight-hour workday and sit for a total of six hours in an

eight-hour workday, occasionally climb ladders, ropes and scaffolds, avoid

concentrated pollutants and temperature extremes, and perform simple, repetitive work

with an SVP of 1 or 2 and no more than occasional changes in the work setting; and (5)

plaintiff had no past relevant work but was capable of working as a routing clerk,

cafeteria attendant, or photocopy machine operator, each of which were unskilled, light

exertion positions and was not, therefore, disabled within the meaning of the SSA. Dkt.

#7, pp.19-29.

        Plaintiff argues that the ALJ failed to reconcile a conflict between plaintiff's

intellectual capability and the reading and math requirements of the positions identified

by the vocational expert. Dkt. #8-1, pp.6-10. Plaintiff also argues that the ALJ failed to

develop the record by incorporating plaintiff's prior successful SSI record, which

contained educational records, into the record of evidence. Dkt. #8-1, pp.10-11.

        The Commissioner responds that there is no actual, apparent conflict

between the Dictionary of Occupational Titles ("DOT"), and the vocational expert's

testimony. Dkt. #9-1, p.4. Rather, the Commissioner alleges that plaintiff is attempting

to challenge the ALJ's determination that plaintiff could perform unskilled work. Dkt. #9-

1, p.5. The Commissioner argues that substantial evidence supports the ALJ's

determination that plaintiff could perform unskilled work. Dkt. #9-1, p.6. Specifically, the Commissioner argues that the consultative psychologist, Dr. Steven Farmer, reported only mild to moderate limitation in plaintiff's ability to understand, remember and apply complex directions and instructions. Dkt. #9-1, p.6. The Commissioner argues that the record is sufficient to support the ALJ's assessment of plaintiff's RFC. Dkt. #9-1, pp.9-10.

In reaching his decision as to plaintiff's mental RFC, the ALJ relied upon a psychiatric evaluation conducted by Todd Deneen, Psy.D., on April 11, 2018 and a psychiatric evaluation and Adult Intelligence Evaluation conducted by Stephen Farmer, Psy.D., on January 30, 2020. Dr. Deneen determined that plaintiff counted sufficiently, but had difficulties with math calculations. Dkt. #7, p.312. For example, when asked to add 2+4, plaintiff calculated 12. Dkt. #7, p.312. He was unable to perform serial 7s from 100 past 93, but did perform serial 3s from 20. Dkt. #7, p.312. With respect to memory, plaintiff was able to recall 3/3 objects immediately, but no objects after a delay. Dkt. #7, p.312. He could recite 4 digits forward, but no digits backward. Dkt. #7, p.312. Dr. Deneen opined that plaintiff had a limited general fund of information with intellectual functioning below average to borderline range. Dkt. #7, p.312. Dr. Deneen noted that plaintiff does not manage his money unassisted. Dkt. #7, p.312. Dr. Deneen diagnosed plaintiff with, *inter alia*, rule out mild neurocognitive disorder and opined that plaintiff would have a moderate to marked limitation using reason to make work-related decisions; interacting adequately with supervisors, co-workers and the public; sustaining concentration and performing a task at a consistent pace; sustaining an

ordinary routine and regular attendance at work; regulating emotions, controlling

behavior and maintaining well-being; and maintaining personal hygiene and appropriate

attire. Dkt. #7, p.313.

Dr. Farmer observed that plaintiff could do counting and simple

calculations such as 5x5. Dkt. #7, p.430. He was also able to complete serial 7s from

100. Dkt. #7, p.430. Dr. Farmer administered the WAIS-IV, which revealed a full scale

IQ score of 70, which falls in the low end of the borderline range of intellectual

functioning. Dkt. #7, p.434. Because plaintiff reported that he could drive independently,

cook, count and manage money,[4] Dr. Farmer determined that plaintiff was disqualified

from a diagnosis of intellectual disability. Dkt. #7, p.435. Dr. Farmer opined that

plaintiff's adaptive functioning appeared to fall in the low average to average range. Dkt.

#7, p.434. Dr. Farmer diagnosed plaintiff with a specific learning disorder and

recommended vocational training and rehabilitation where plaintiff could learn skills that

are consistent with his level of cognitive functioning. Dkt. #7, pp.431 & 435. Dr. Farmer

opined that plaintiff would have

> No evidence of limitation with understanding, remembering,
> or applying simple directions or instructions. Mild to
> moderate limitation with understanding, remembering, and
> applying complex directions and instructions, mild to
> moderate limitations using reason and judgment to make
> work related decisions. Mild limitation interacting adequately
> with supervisors, coworkers, and the public, moderate
> limitation with sustaining concentration and performing a
> task at a consistent pace. No limitation sustaining ordinary

---

[4] Plaintiff reported that he is able to dress, bathe, and groom himself, cook and prepare food, do general cleaning, laundry, shop, count and manage money despite cognitive deficits, drive despite cognitive deficits, and is able to take public transportation. Dkt. #7, p.431.

> routine and regular attendance at work, mild limitation
> regulating emotion, controlling behavior, and maintaining
> well being. No limitation maintaining personal hygiene and
> appropriate attire. Mild limitation with awareness of normal
> hazards and taking appropriate precautions.

Dkt. #7, p.431.


The ALJ also considered a Psychological Medical Source Opinion Evaluation completed on September 18, 2019 by Matthew Dougherty, plaintiff's behavioral health therapist at Villa of Hope. Dkt. #7, p.361. Mr. Dougherty checked a box indicating that plaintiff was receiving medical treatment, mental health therapy, psychosocial support(s) or a highly structured setting(s) from Villa of Hope that was ongoing and that diminishes the symptoms and signs of plaintiff's mental health disorder. Dkt. #7, p.361. Mr. Dougherty opined that plaintiff was moderately limited in his ability to understand, remember or apply information; concentrate, persist or maintain pace; and adapt or manage oneself, and mildly limited in his ability to interact with others. Dkt. #7, p.361. Mr. Dougherty further opined that plaintiff was unable to meet competitive standards to work in coordination with or proximity to others without being unduly distracted and was seriously limited in his ability to maintain regular attendance and be punctual within customary tolerances and to deal with normal work stress. Dkt. #7, pp.360-361. Mr. Dougherty also opined that plaintiff would be absent about two days per month because of his impairment or treatment. Dkt. #7, p.361.


The ALJ found Dr. Farmer's opinion persuasive because it was based upon Dr. Farmer's examination of the plaintiff, including intelligence testing. Dkt. #7, p.27. The ALJ found Dr. Deneen's opinion less persuasive because it was not

consistent with Dr. Farmer's opinion or plaintiff's course of conservative treatment for his psychiatric condition. Dkt. #7, p.27. The ALJ also found Mr. Dougherty's opinion less persuasive because it was not consistent with Dr. Farmer's opinion or supported by Villa of Hope's treatment of the plaintiff. Dkt. #7, p.27.

As an initial matter, the Court is concerned that Dr. Farmer's opinion that plaintiff was disqualified from a diagnosis of intellectual disability due to his adaptive functioning is based upon reported activities of daily living that are inconsistent with other evidence in the record and during a time frame that plaintiff was receiving support from a care manager at Villa of Hope. The Court notes that there are limited records from Villa of Hope as to the level of support plaintiff was receiving. Moreover, the Court agrees with plaintiff that, given plaintiff's testimony as to his inability to read and his demonstrated deficits with math calculations, as well as indications that plaintiff received disability benefits as a child for a learning disability and again as an adult, further inquiry as to plaintiff's capacity to meet the General Educational Development ("GED") levels for the jobs identified by the VE - or any other job - is warranted. Thus, the Court finds that additional development of the record is required. *See Kelvin B. v. Comm'r of Soc. Sec*., 2023 WL 1431637, at *7 (W.D.N.Y. Feb. 1, 2023) (duty to develop the record is "triggered where there is a gap in the record precluding the ALJ from conducting an adequate assessment.").

To meet its burden at step 5, the ALJ must pose hypothetical questions to the VE which reflect the full extent of the claimant's capabilities and impairments to

provide a sound basis for the VE's testimony. *Sanchez v. Barnhart*, 329 F.Supp.2d 445,

449 (S.D.N.Y. 2004). "If a hypothetical question does not include all of a claimant's

impairments, limitations, and restrictions, or is otherwise inadequate, a vocational

expert's response cannot constitute substantial evidence to support a conclusion of no

disability." *Haiss v. Berryhill*, 17CV8083, 2019 WL 3738624, at *8 (S.D.N.Y. May 15,

2019), *R&R adopted by* 2019 WL 5690712 (Nov. 4, 2019). "A vocational expert's

testimony is only useful if it addresses whether the particular claimant, with his

limitations and capabilities, can realistically perform a particular job." *Lugo v. Chater*,

932 F. Supp. 497, 504 (S.D.N.Y. 1996). "Proper use of vocational testimony

presupposes both an accurate assessment of the claimant's physical and vocational

capabilities, and a consistent use of the profile by the vocational expert in determining

which jobs the claimant may still perform." *Id.*

Because the ALJ's hypothetical failed to incorporate plaintiff's capacity to

meet the GED levels, the VE's response to that hypothetical cannot meet SSA's

burden of demonstrating that plaintiff could perform jobs which exist in significant

numbers in the national economy, warranting remand for further proceedings. *See*

*Rodriguez v. Colvin*, 13-CV-6360, 2014 WL 3882191, at *18 (W.D.N.Y. Aug. 7, 2014)

(remanding to assess whether plaintiff can meet the educational requirement for the

jobs identified by the VE where the VE did not tell the ALJ what the reasoning, math

and language requirements were for the jobs identified, and neither the ALJ nor counsel

asked the VE about them); *See also Molina v. Colvin*, 13-CV-6532, 2014 WL 4955368,

at * (W.D.N.Y. Oct. 2, 2014) (remanding with instructions to locate prior claim file where

plaintiff claimed disability benefits had been awarded due to intellectual disability but discontinued due to incarceration and where ALJ's hypothetical failed to include plaintiff's lack of literacy and VE did not, therefore, address plaintiff's ability to meet the mathematical and language requirements for the jobs identified); *Cf. Malone v. Comm'r of Soc. Sec.,* 21-CV-1928, 2022 WL 4134368, at *12 (S.D.N.Y. Aug. 6, 2022) (rejecting request to remand where testing assessed plaintiff's reading grade level, providing substantial evidence in the record to support the ALJ's determination that plaintiff could perform simple work requiring Level 1 language skills), *R&R adopted by* 2022 WL 4134510 (Sept. 12, 2022); *Villalobo v. Saul*, 19 Civ. 11560, 2021 WL 830034, at *20 (S.D.N.Y. Feb. 9, 2021) (rejecting request to remand where hypothetical posed to VE incorporated plaintiff's deficiencies in language skills).

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #8), is granted and the matter is remanded for further proceedings and the Commissioner's motion for judgment on the pleadings (Dkt. #9), is denied.

The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**DATED:**     **Buffalo, New York**
**March 31, 2023**

                              **s/ H. Kenneth Schroeder, Jr.**
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**

-12-